IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**NAGIBULLAH NABI,**

    Petitioner,

v.                                      No. CV 12-0259 MV/LAM

**RAY TERRY, Warden of Otero County
Processing Center, in his official capacity,
ADRIAN MACIAS, El Paso Field Office
Director, Immigration and Customs Enforcement,
ERIC H. HOLDER, Jr., U.S. Attorney General
in their official capacity,**

    Respondents.

# PROPOSED FINDINGS AND RECOMMENDED DISPOSITION[1]

## PROPOSED FINDINGS

**THIS MATTER** is before the Court on Petitioner's *Petition For Writ Of Habeas Corpus And Immediate Release From Custody (Doc. 1)* (hereinafter "Petition"), filed March 13, 2012, and *Petitioner's Notice of Recently Decided Additional Authority (Doc. 10)*, filed April 27, 2012. Respondents[2] filed a response on May 3, 2012 (*Doc. 11*), and a *Notice of Supplemental Authority*

---

[1] Within fourteen (14) days after a party is served with a copy of these Proposed Findings and Recommended Disposition, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such proposed findings and recommended disposition. A party must file any objections with the Clerk of the United States District Court for the District of New Mexico within the fourteen (14) day period allowed if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed. Pursuant to Fed. R. Civ. P. 72(b)(2), a party may respond to another party's objections within fourteen (14) days after being served with a copy of the objections.

[2] Petitioner asserts that Respondents Macias and Holder, Jr. are proper parties [*Doc. 1* at 4-5], and this assertion is not disputed by Respondents, so the Court will retain them in this action.

*(Doc. 15)* on June 3, 2012. Petitioner filed a reply on May 17, 2012 [*Doc. 12*]. United States District Judge Martha Vázquez referred the claims raised in Petitioner's Petition to the undersigned for proposed findings and a recommended disposition, and a hearing, if necessary. [*Doc. 9*]. Having considered the parties' submissions, relevant law, and the record in this case, the undersigned, for the reasons set forth below, recommends that Petitioner's ***Petition For Writ Of Habeas Corpus And Immediate Release From Custody (Doc. 1)*** be **GRANTED** as set forth below.

The Court has jurisdiction of this § 2241 petition because Petitioner was confined in New Mexico at the time he filed the petition. *See* [*Doc. 1*] at 3; *Rumsfeld v. Padilla*, 542 U.S. 426, 443 (2004) ("The plain language of the habeas statute thus confirms the general rule that for core habeas petitions challenging present physical confinement, jurisdiction lies only in one district: the district of confinement."); *United States v. Scott*, 803 F.2d 1095, 1096 (10th Cir. 1986) ("A § 2241 petition for a writ of habeas corpus must be addressed to the federal district court in the district where the prisoner is confined.").

*Factual and Procedural Background*

Petitioner states that he is a citizen of Afghanistan who was granted lawful permanent resident status on July 31, 1972. [*Doc. 1* at 3 and 6] and [*Doc. 1-2* at 3]. On August 7, 2010, Petitioner was arrested for domestic violence and related charges. [*Doc. 1* at 6] and [*Doc. 11* at 2]. Petitioner posted bond and was released on or about September 23, 2010. [*Doc. 1* at 6]. On November 7, 2011, Petitioner pled no contest to false imprisonment, in violation of N.M.S.A. 1978 § 30-4-3, and aggravated battery, in violation of N.M.S.A. 1978 § 30-3-16. [*Doc. 1* at 6] and [*Doc. 11* at 2]. Petitioner was sentenced to four years and six months imprisonment, which was suspended, and was ordered to serve four years and six months of supervised probation. [*Doc. 1* at 6] and [*Doc. 11* at 2]. On February 24, 2012, Petitioner was arrested and taken into Immigration

2

and Custom Enforcement (hereinafter "ICE") custody. [*Doc. 1* at 7] and [*Doc. 11* at 2]. Petitioner is currently being held at the Otero County Processing Center. [*Doc. 1* at 3]. Petitioner is being detained under the provisions of Section 236 of the Immigration and Nationality Act (hereinafter "INA") (8 C.F.R. § 236), codified at 8 U.S.C. § 1226(c), which ICE alleges subjects Petitioner to mandatory detention. [*Doc. 1* at 7][3] and [*Doc. 11* at 2].

Petitioner contends that his mandatory detention is unlawful for two reasons. First, Petitioner contends that the mandatory detention provision of § 1226(c) does not apply to him because he was only in pre-conviction custody for a short period of time following his arrest, and was not taken into custody following his conviction. [*Doc. 1* at 5 and 8-11]. Second, Petitioner contends that the mandatory detention provision of § 1226(c) does not apply to him because he was taken into ICE custody "nearly one and a half years after his release from" pre-conviction custody, and Petitioner contends that § 1226(c) applies only to persons taken into custody immediately after their release. *Id.* at 6 and 11. Petitioner notes that there is a Bureau of Immigration Appeals (hereinafter "BIA") decision holding that pre-conviction detention is sufficient to trigger mandatory detention under § 1226(c) (*Matter of Kotliar*, 24 I. & N. Dec. 124 (BIA 2007)), and a BIA decision holding that ICE does not have to detain a person immediately after release from criminal custody in order for mandatory detention under § 1226(c) to apply (*Matter of Rojas*, 23 I. & N. Dec. 117 (BIA 2001)). [*Doc. 1* at 9 and 11]. Petitioner contends, however, that these cases are not entitled to deference by this Court. *Id.* at 9-22. Petitioner also notes that in a similar case filed in this Court, the undersigned recommended that the petitioner should be provided a bond hearing, and that recommendation was adopted by United States Senior District Judge James A. Parker. *Id.* at 24-25

---

[3]The Court notes that Petitioner states he is subject to the mandatory detention provision of 8 U.S.C. § 1126(c), but that appears to be a typographical error because the mandatory detention provision is § 1226(c).

(citing *Melero Valdez v. Ray Terry*, No. 2:11-CV-0897, JAP/LAM (D. N.M. Feb. 2, 2012 and April 18, 2012, respectively) (*Docs. 14* and *18*)); *see also* [*Doc. 10*] (***Petitioner's Notice of Recently Decided Additional Authority***). Petitioner, therefore, asks the Court to issue an order releasing Petitioner from custody, or in the alternative, directing the Executive Office of Immigration Review to give Petitioner a bond hearing within a set time period. [*Doc. 1* at 26].

In response, Respondents contend that ICE lawfully detained Petitioner pursuant to § 1226(c) "approximately 14 weeks" after he was placed under New Mexico supervised probation,[4] and that the Court should defer to the BIA decisions interpreting the statute as requiring mandatory detention under these circumstances. [*Doc. 11* at 5-24].

*Analysis*

Section 1226(a) of the INA governs the detention of an alien pending a decision on whether the alien is to be removed from the United States, and provides that the Attorney General may release the alien on bond or conditional parole if he or she does not pose a danger to the community and is not a flight risk. 8 U.S.C. § 1226(a) and (c); *see also* 8 C.F.R. § 236.1(c)(8). Section 1226(c)(1), however, mandates detention of specified criminal aliens, including those who are deportable for having committed offenses under § 1227(a)(2)(A)(iii), without an opportunity for a bond hearing before an immigration judge. Respondents contend that Petitioner is deportable for having committed offenses under § 1227(a)(2)(A)(iii), which states that an alien is deportable if he or she is convicted of an aggravated felony at any time after admission. [*Doc. 11* at 2]. Petitioner does not contest this assertion.

---

[4]The Court addresses the discrepancy between Petitioner's and the United States' contentions regarding when Petitioner was taken into custody below at footnote 5.

Section 1226(c) mandates detention of specified criminal aliens "when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense." While there are exceptions to this mandatory detention provision in § 1226(c)(2), Petitioner does not contend that these exceptions apply to him. *See* [*Doc. 1* at 5]. In *Matter of Kotliar*, the BIA held that release from pre-conviction detention was sufficient to satisfy the "when released" requirement when mandatory detention is triggered under § 1226(c) (24 I. &N. Dec. at 125), and in *Matter of Rojas*, the BIA held that an alien was subject to mandatory detention under § 1226(c), even though he was not immediately taken into custody by immigration officials when released from state incarceration (23 I. &N. Dec. at 127) (alien had been released from state incarceration two days earlier).

### 1. Pre-Conviction Confinement

The Court first addresses Petitioner's contention that § 1226(c) does not apply to him because he was only in pre-conviction custody following his arrest, and was not placed into physical custody following his conviction. Petitioner contends that his detention prior to his conviction does not satisfy the "when released" requirement of § 1226(c) because that provision is not triggered until there is a conviction. [*Doc. 1* at 9]. The Court agrees that § 1226(c) did not apply to Petitioner until his conviction because § 1226(c) applies to Petitioner by virtue of § 1227(a)(2)(A)(iii), which requires that an alien be "*convicted* of an aggravated felony" (emphasis added). However, § 1226(c) explicitly states that, for specified criminal aliens, mandatory detention is required "when the alien is released, *without regard to whether the alien is released on parole, supervised release, or probation* . . ." (emphasis added). Therefore, the triggering event for mandatory detention to apply was Petitioner's conviction, and his release on supervised probation following that conviction

5

satisfies the "when released" requirement of § 1226(c).  The Court finds that, to the extent *Matter of Kotliar* holds that an alien is subject to mandatory detention under § 1226(c) based on release from custody from an arrest preceding a conviction, this holding is contrary to the plain language of § 1227(a)(2)(A)(iii) that an alien is not deportable until he or she is *convicted* of an aggravated felony.

Next, Petitioner contends that the mandatory detention provision does not apply to him because he was not taken into physical custody following his conviction, but was, instead, placed on probation.  [*Doc. 1* at 9-11].  The Court finds this argument unavailing.  Nowhere in § 1226 does Congress state that an alien must be released from physical custody for the mandatory detention provision to apply.  Moreover, even though Petitioner was released from physical custody prior to his conviction, that does not mean that he was free of the Court's custody or control.  *See, e.g., Schwartz v. N.M. Corr. Dept. Probation and Parole*, No. 09-2302, 384 Fed. Appx. 726, 731, 2010 WL 2531456 (10th Cir. June 24, 2010) (unpublished) (explaining that a habeas petitioner who had been placed on parole was still "in custody" because he is subject to restraints on his liberty) (citation omitted); *United States v. Draper*, 995 F.2d 982, 987 (9th Cir. 1993) (explaining that "absconding from pretrial release amounts to escape from custody under the Sentencing Guidelines").

Petitioner cites several cases in support of his argument that "released" requires physical confinement under this statute.  [*Doc. 1* at 9-10] (citing *Louisaire v. Muller*, 758 F.Supp.2d 229, 236 (S.D.N.Y.2010); *Alikhani v. Fasano*, 70 F.Supp.2d 1124, 1130 (S.D. Cal. 1999); *Burns v. Cicchi*, 702 F.Supp.2d 281, 288 (D. N.J. 2010); *Beckford v. Aviles*, Civil Action No. 10-2035 (JLL), 2011 WL 3515933, *7 (D. N.J. Aug. 9, 2011) (unpublished); *Saysana v. Gillen*, 590 F.3d 7, 10 (1st Cir. 2009); and *Quezada-Bucio v. Ridge*, 317 F.Supp.2d 1221, 1230 (W.D.Wash. 2004)).  While

6

these cases include statements that may imply that mandatory detention requires release from physical incarceration, such statements are dicta because none of these cases directly decided the issue of whether the term "released" contained in § 1226(c) requires physical confinement. *See Louisare*, 758 F.Supp. at 236 (holding that for § 1226(c)(1) to apply, the alien must be released from "criminal sentences" related to an offense enumerated in § 1226(c)(1)(A)-(D), but does not address whether physical custody is a requirement for the statute to apply); *Alikhani*, 70 F.Supp.2d at 1130 (holding that § 1226(c) does not apply retroactively to persons who were released from custody prior to the effective date of the mandatory detention provision, and does not address whether physical custody is a requirement for the statute to apply); *Burns*, 702 F.Supp.2d at 288 (holding that mandatory detention provision does not apply because the petitioner was released from incarceration for an enumerated offense prior to the effective date of the statute, and does not address whether physical custody is a requirement for the statute to apply); *Beckford*, 2011 WL 3515933 at *7 (holding that § 1226(c)(1) does not apply because the petitioner was not taken into custody immediately upon his release from incarceration, but does not address whether physical custody is a requirement for the statute to apply); *Saysana*, 590 F.3d at 14 (holding that § 1226(c) applies only when an alien is released from custody for one of the offenses listed in § 1226(c)(1)(A)-(D), and does not address whether physical custody is a requirement for the statute to apply); *Quezada-Bucio*, 317 F.Supp.2d at 1230 (holding that § 1226(c) does not apply to aliens who were not taken into immigration custody immediately upon their release from custody, but does not address whether physical custody is a requirement for the statute to apply). Moreover, the holdings of these cases are not binding on this Court, especially where here, the event that triggered mandatory detention (Petitioner's conviction for an enumerated offense) occurred after Petitioner's release from pre-conviction incarceration but before his sentence of probation. The Court finds that Petitioner

should not receive a windfall because he was released pre-conviction and was never incarcerated post-conviction when his conviction triggered mandatory detention.

For these reasons, the Court finds that Petitioner is not subject to mandatory detention under § 1226(c) based on his release from pre-conviction custody; however, Petitioner may be subject to mandatory detention based on his release on supervised probation following his conviction, if the other requirements of § 1226(c) are met.

### *2. Immediate Detention Required*

Even though the Court finds that Petitioner may be subject to mandatory detention under § 1226(c) based on his release on probation following his conviction, the Court next addresses Petitioner's contention that he is not subject to mandatory detention under § 1226(c) because he was not <u>immediately</u> detained when he was released from custody.[5]  Petitioner contends that the Court need not defer to the BIA's decision in *Matter of Rojas*, which holds to the contrary. In determining immigration laws, "[t]he judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent." *INS v. Cardoza-Fonseca*, 480 U.S. 421, 447-48 (1987) (quoting *Chevron USA, Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843 n.9 (1984)).  Under *Chevron*, the Court must first determine whether "Congress has directly spoken to the precise question at issue," and, if it has, the Court "must give effect to the unambiguously expressed intent of Congress."  467 U.S. at 842-43 (footnote omitted).  If Congress has been silent or used language that is ambiguous, then an agency's

---

[5] While Petitioner contends that he was taken into custody more than one-and-a-half years after his release from <u>pre-conviction confinement</u> (*Doc. 1* at 6), as the Court explained above, the triggering event for mandatory detention to apply was Petitioner's conviction, not his pre-conviction confinement. Respondents contend that Petitioner was taken into custody "approximately 14 weeks" after he was placed on supervised probation after his conviction (*Doc. 11* at 2); however, there was a delay of more than fifteen (15) weeks between Petitioner's conviction on November 7, 2011, and his arrest by ICE on February 24, 2012.

interpretation of the statute is given controlling weight unless it is "arbitrary, capricious or manifestly contrary to the statute." *Id.* at 843-44 (footnote omitted). Deference is appropriate where "Congress delegate[s] rule-making power to an agency and thereby [seeks] to rely on agency expertise in the formulation of substantive policy." *Jurado-Gutierrez v. Greene*, 190 F.3d 1135, 1148 (10th Cir. 1999) (citation and internal quotation marks omitted).

While the Tenth Circuit Court of Appeals has not addressed whether the mandatory detention provision of § 1226(c) should apply to an alien who was not taken into custody immediately upon release, most federal district courts, including this Court, that have ruled on this issue have agreed that "when the alien is released" unambiguously means immediately after release from custody and have rejected the BIA's interpretation of § 1226(c). *See Melero Valdez v. Terry*, No. 2:11-CV-0897, JP/LAM (D. N.M. Feb. 2, 2012 and April 18, 2012) (*Docs. 14* and *18*) *(Proposed Findings and Recommended Disposition* and *Order Adopting the Proposed Findings and Recommended Disposition*, respectively) (holding that § 1226(c) did not apply where the petitioner was detained more than a year after the conviction that made him deportable under § 1227(a)(2)(A)); *Cruz Arellano v. Terry, et al.*, No.2:12-0112 MCA/LAM (D. N.M. May 25, 2012) (*Docs. 9* and *13*) *(Proposed Findings and Recommended Disposition* and *Order Adopting the Proposed Findings and Recommended Disposition*, respectively) (same); *Louisaire*, 758 F.Supp.2d at 236 ("*Matter of Rojas*, however, is wrong as a matter of law and contrary to the plain language of the statute. The clear purpose of § 1226(c)(1) is to authorize the mandatory detention of immigrants who have committed offenses enumerated within § 1226(c)(1)(A)-(D) *immediately* upon their release from criminal sentences for those *same offenses*, even if they are still serving part of their sentence . . . under parole, supervised release, or probation.") (citations and internal quotation marks omitted); *Khodr v. Adduci*, 697 F.Supp.2d 774, 774-75 (E.D.Mich. 2010) (finding that because § 1226(c) "clearly

and unambiguously requires the Attorney General to take into custody certain aliens without delay in order to make applicable the mandatory detention provisions of 8 U.S.C. § 1226(c), the Court does not defer to the Board of Immigration Appeals' decision to the contrary in *Matter of Rojas*"); *Scarlett v. Dept. of Homeland Sec., ICE*, 632 F.Supp.2d 214, 219 (W.D.N.Y. 2009) (holding that § 1226(c) does not apply because the petitioner was not taken into immigration custody until more than eighteen months from the time of his release from incarceration on the underlying criminal charges); *Waffi v. Loiselle*, 527 F.Supp.2d 480, 488 (E.D.Va. 2007) (finding that § 1226(c) does not apply to an alien who was taken into immigration custody over a month after his release from state custody); *Quezada-Bucio*, 317 F. Supp. 2d at 1231 ("[T]he Court agrees . . . that the mandatory detention statute, [§ 1226(c)], does not apply to aliens who have been taken into immigration custody several months or several years after they have been released from state custody.") (footnote omitted); *Aguilar v. Lewis*, 50 F. Supp. 2d 539, 544 (E.D.Va. 1999) (same); *Alwaday v. Beebe*, 43 F. Supp. 2d 1130, 1133 (D.Or. 1999) ("[I]t is arbitrary and capricious for respondent[s] to interpret [the phrase 'when the alien is released'] to include aliens . . . who were released from incarceration many years before coming into custody of the INS for deportation proceedings.") (quoting *Pastor-Camarena v. Smith*, 977 F. Supp. 1415, 1418 (W.D.Wash. 1997)); *Kot v. Elwood*, Civil No. 12-1720 (FLW), 2012 WL 1565438 at *8 (D.N.J. May 2, 2012) (unpublished) (finding, alternatively, that Section 1226(c) did not apply "because DHS did not take Kot into custody when he was released from criminal incarceration . . ., but allowed him to live in the community for 12 years before taking him into custody"); *Nunez v. Elwood*, Civil Action No. 12-1488 (PGS), 2012 WL 1183701 at *3 (D.N.J. April 9, 2012) (unpublished) ("The Court finds that 'when . . . released' means 'immediately' and not 'any time after' release as determined by the BIA's interpretation [in *Matter of Rojas*]."); *Ortiz v. Holder*, No. 2:11CV1146 DAK, 2012 WL 893154

at *3 (D. Utah March 14, 2012) (unpublished) ("In light of the plain language of the statute at issue, traditional tools of statutory construction, and the legislative history, the court concludes that the inten[t] of Congress is unambiguous: Congress intended for mandatory detention to apply only to noncitizens who are detained *at the time of their release* from criminal custody for an enumerated offense under 8 U.S.C. § 1226(c)."); *Christie v. Elwood*, Civil No. 11-7070 (FLW), 2012 WL 266454 at *9 (D.N.J. Jan. 30, 2012) (unpublished) ("This Court joins the overwhelming majority of courts and finds that Congress clearly intended to give the Attorney General the authority of mandatory detention under § 1226(c)(1) only if the government takes the alien into custody immediately when the alien is released from custody resulting from the removable offense enumerated in § 1226(c).") (emphasis added) (citation and internal quotation marks omitted); *Parfait v. Holder*, Civil No. 11-4877 (DMC), 2011 WL 4829391 at *6 (D.N.J. Oct. 11, 2011) (unpublished) (holding that because "taking the alien into custody more than two and one-half years after the alien is released does not fall within the command to take the alien into custody when the alien is released, the BIA's interpretation is contrary to the plain meaning of the statute"); *Beckford*, 2011 WL 3515933 at *7-9 (rejecting reasoning of *Matter of Rojas* and finding that the phrase "when the alien is released" is unambiguous and held that an alien who was taken into immigration custody nearly three years after he was released from incarceration was not subject to mandatory detention under § 1226(c)(1)); *Keo v. Lucero*, No. 1:11cv614, 2011 WL 2746182 *3-5 (E.D. Va. July 13, 2011) (unpublished) (holding that § 1226(c) does not apply when alien was released from incarceration eight years prior to being detained for removal proceedings); *Sylvain v. Holder*, Civil No. 11-3006 (JAP), 2011 WL 2580506 at *7 (D.N.J. June 28, 2011) (unpublished)  (holding that § 1226(c) does not apply when alien was released from incarceration four years prior to being detained for removal proceedings); *Dang v. Lowe*, Civil No. 1:CV-10-0446, 2010 WL 2044634 at *1

11

(M.D.Pa. May 20, 2010) (unpublished) (same interpretation of § 1226(c)); *Bromfield v. Clark*, No. C06-757RSM, 2007 WL 527511 at *4-5 (W.D. Wash. Feb. 14, 2007) (unpublished) (same); *Boonkue v. Ridge*, No. CV 04-566-PA, 2004 WL 1146525 at *2 (D.Or. May 7, 2004) (unpublished) (same).

The Court finds the reasoning of these decisions to be persuasive. As stated in *Quezada-Bucio*, "if Congress had intended for mandatory detention to apply to aliens at any time after they were released, it easily could have used the language '*after* the alien is released,' 'regardless of when the alien is released,' or other words to that effect. Instead, Congress chose the word 'when,' which connotes a much different meaning." 317 F.Supp.2d at 1230. The Court agrees that the word "when" in the context of release from custody means immediately upon release. For example, when a court orders that a defendant shall serve a term of supervised release <u>when</u> the defendant is released from incarceration, the court does not mean that supervised release could start at any time after the defendant was released -- instead, it means that the supervised release begins at the time of the release from incarceration. As explained by the court in *Waffi*, "[t]he term 'when' includes the characteristic of 'immediacy,' referring in its primary conjunctive sense, to action or activity occurring 'at the time that' or 'as soon as' other action has ceased or begun." 527 F.Supp.2d at 488 (citing 20 THE OXFORD ENGLISH DICTIONARY 209 (2d ed. 1989), and THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (4th ed. 2000)). The Court agrees and finds that Congress was not ambiguous when it wrote that an alien is subject to mandatory detention "when the alien is released," and the clause "when the alien is released" means immediately after release and not "at any time after release."

One circuit court and other federal district courts, on the other hand, have held that the clause "when the alien is released" is ambiguous, and have given the BIA's decision in *Matter of Rojas*

deference under the *Chevron* rationale. *See Hosh v. Lucero*, --- F.3d ----, 2012 WL 1890390 at *3 (4th Cir. May 25, 2012) (finding that the clause "when . . . released" is ambiguous and does not mean "at the moment of release, *and not later*") (internal quotation marks omitted) (overruling *Waffi*, 527 F.Supp.2d 480, *Aguilar*, 50 F.Supp.2d 539, and *Keo*, 2011 WL 2746182); *Khetani v. Petty*, No. 12-0215-CV-W-ODS, 2012 WL 1428927 at *2 (W.D.Mo. April 24, 2012) (unpublished); *Santana v. Muller*, No. 12 Civ. 430(PAC), 2012 WL 951768 at *4 (unpublished); *Hernandez v. Sabol*, Civil No. 1:CV-11-1064, 2011 WL 4949003 at *3 (M.D.Pa. Oct. 18, 2011) (unpublished); *Diaz v. Muller*, Civil Action No. 11-4029 (SRC), 2011 WL 3422856 at *2-3 (D.N.J. Aug 4, 2011) (unpublished); *Gomez v. Napolitano*, No. 11 Civ. 1350 (JSR), 2011 WL 2224768 at *3 (S.D.N.Y. May 31, 2011) (unpublished); *Sulayao v. Shanahan*, No. 09 Civ. 7347 (PKC), 2009 WL 3003188 at *4-6 (S.D.N.Y. Sept. 15, 2009) (unpublished); *Serrano v. Estrada*, No. 3-01-CV-1916-M, 2002 WL 485699 at *3 (N.D.Tex Mar. 6, 2002) (unpublished). The Court, however, is not bound by any of these decisions and respectfully finds that the reasoning of these cases is not persuasive. Statutory language should not be construed in a way that renders a term surplusage. *McCloy v. U.S. Dept. of Agriculture*, 351 F.3d 447, 451 (10th Cir. 2003) ("Under a long-standing canon of statutory interpretation, one should avoid construing a statute so as to render statutory language superfluous.") (citation omitted). If the term "when the alien is released" means that the Attorney General shall take into custody any aliens who have committed offenses enumerated within § 1226(c)(1)(A)-(D) without regard to the timing of that alien's release from custody, then the phrase "when the alien is released" becomes surplusage.

In addition, the Court finds that interpreting § 1226(c) to mean that it applies when an alien is detained immediately comports with the Congressional intent behind the statute to prevent problems locating criminal aliens for deportation after their release (*see Demore v. Kim*,

13

538 U.S. 510, 519-20 (2003)), because, if those aliens are immediately detained, they pose no flight risk and the intent behind mandatory detention is attained. This interpretation further comports with the Congressional intent to detain the most dangerous criminals because their immediate detention provides more protection to the community. *See id.* at 531 ("[T]he justification for 8 U.S.C. § 1226(c) is based upon the Government's concerns over the risks of flight and danger to the community[.]") Moreover, mandatory detention is a harsh penalty that should be strictly and narrowly enforced. *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (stating that "[a] statute permitting indefinite detention of an alien [raises] serious constitutional problem[s]" and, therefore, detention must comport with the Due Process Clause; "government detention violates that Clause unless the detention is ordered in a *criminal* proceeding with adequate procedural protections . . . or, in certain special and narrow nonpunitive circumstances, . . . where a special justification, such as harm-threatening mental illness, outweighs the individual's constitutionally protected interest in avoiding physical restraint") (citations and internal quotation marks omitted).

Respondents urge the Court to allow for "*some* measurable delay after a state conviction . . . for the United States to detain an alien." [*Doc. 11* at 5]. As a basis for this request, Respondents state that "ICE does not necessarily track the progress of [lawful permanent residents] through New Mexico's thirteen judicial [districts], and that "[t]rying to track a state case for an alien who is *lawfully* in the United States would not be proper, and it would be very impractical." *Id.* at 8. Respondents also state that, for immigration purposes, a conviction "may not be as readily identifiable as an adjudication of guilt for the United States citizen." *Id.* at 9 (referring to 8 U.S.C. § 1101(a)(48)(A), which explains that the term "conviction" with respect to an alien can include when a judge or jury finds that an alien "has admitted sufficient facts to warrant a finding of guilt," or a "judge has ordered some form of punishment, penalty, or restraint on the alien's liberty to be

14

imposed"). Respondents argue further that, although ICE "has a tool in its 'Notice of Detainer' to obtain advance notice of when an *illegal alien* is about to be released from state or local custody, [lawful permanent residents] are lawfully in the United States and a detainer notice cannot, and should not, be lodged against them unless based on a prior conviction." *Id.* at 10. Respondents propose that the Court define the clause "when released" under § 1226(c) to encompass the time period between conviction and when ICE receives notification from the state's probation system of a conviction. [*Doc. 11* at 11]. Respondents further state that once ICE learns of an alien's conviction, it must obtain a copy of the conviction, confirm the alien's deportability, request permission from the Regional Office of Chief Counsel to detain the alien, and interview the alien to confirm he or she is the same person listed in the notice of conviction from the state court. *Id.* at 12-13. In addition, Respondents contend that the Court should allow ICE to wait until the alien's next probation appointment to detain him or her, because home detentions present additional dangers for agents, the alien, and the alien's family members. *Id.* at 17-18.

The Court finds this request to be without merit for several reasons. First, the Court will not make a recommendation based on Respondent's hypothetical set of facts that ICE *may* not be tracking all aliens in the state system and *may* not be aware of when an alien becomes eligible for deportation. *See Norvell v. Sangre de Cristo Development Co., Inc.*, 519 F.2d 370, 375 (10th Cir. 1975) ("Judicial restraint should be exercised to avoid rendition of an advisory opinion.") (citation omitted). In addition, to the extent these facts pertain to Petitioner's case, the Court finds that Respondents have not demonstrated that ICE detained Petitioner within as short a time as possible to comport with the Congressional intent behind the statute, which is to prevent flight risk and to detain the most dangerous criminals. Respondents' argument that they cannot lodge a "Notice of Detainer" against a lawful permanent resident unless it is based on a prior conviction

(*Doc. 11* at 10) has no merit for two reasons: First, because it is irrelevant that it may be easier for ICE to lodge a detainer against an illegal alien in state custody than it is against a lawful permanent resident in custody; and second, because even if ICE could lodge a detainer against a lawful permanent resident prior to his pre-conviction release, ICE would still be unable to detain him for deportation proceedings until he has been convicted of the crime that renders him deportable.

Regardless, even if the Court were to find that "when released" encompasses detention of an alien as soon as ICE learns of his or her conviction, that did not happen in this case. Here, Petitioner was convicted on November 11, 2011, and the state provided ICE with a list of individuals placed on probation on January 6, 2012; however, Petitioner was not arrested until February 24, 2012. *Id.* at 16. While the Court commends ICE for wanting to confirm that the aliens they detain are the correct persons and have not become naturalized citizens prior to detaining them, the delay involved in such investigation conflicts with the intent behind the mandatory detention statute applying to those aliens who are the most likely to flee or to pose a danger.

In addition, Respondent's claim that ICE should wait for the alien's next probation appointment to avoid the dangers of arrests at his or her home further flies in the face of Congressional intent to detain those aliens most likely to flee or present a danger because it gives them even more time out of custody. Moreover, if ICE were to lodge a detainer notice on those aliens who are the greatest flight risk or danger to the community prior to their conviction, then detention would not happen at their homes -- it would happen at Court or at the jail where the alien is being held. This contention is also at odds with the facts of many, if not most, of the cases cited above, where the aliens were arrested at home -- not at their probation appointments. *See, e.g., Hosh v. Lucero*, 2012 WL 1890390 at *1. The Court, therefore, finds that Respondents have failed to demonstrate that a fifteen-week delay between Petitioner's conviction and arrest falls within the

statutory language that mandatory detention applies if the alien is detained *when* he or she is released. Just as the Court in *Ortiz v. Holder* explained, the Court expresses no opinion on whether "when released" means "at the exact moment of release or at some reasonable number of hours or days after release," because the delay here was much longer than necessary to comport with the intent behind the statute. 2012 WL 893154 at *3 n.6.

      The United States also attempts to distinguish this Court's treatment of *United States v. Montalvo-Murillo*, 405 U.S. 711 (1990) in *Melero Valdez v. Ray Terry*, No. 2:11-CV-0897 (*Doc. 18*). [*Doc. 11* at 18-24]. The United States Supreme Court in *Montalvo-Murillo* held that the release of detainees when the Government fails to comply with a statutory command that a detention hearing be held at the defendant's first appearance in court is too harsh a sanction. 405 U.S. at 718. This Court in *Melero Valdez* distinguished that holding by explaining that it was not mandating the petitioner's release; instead, the Court was merely ordering that the petitioner be given a bond hearing so an immigration judge can determine whether he is a threat to the community or a flight risk. *See Melero-Valdez*, No. 2:11-CV-0897 (*Doc. 18* at 6). Now, the United States contends that *Montalvo-Murrillo* is applicable to this case "because it stands for the proposition that statutory deadlines can either be jurisdictional or not jurisdictional, and 'when' is a processing rule for which missing the 'when the alien is released' admonition does not deprive ICE of the power to act under § 1226(c)." [*Doc. 11* at 19] (citing *Gonzalez v. Thaler*, 132 S.Ct. 641 (2012)). The United States contends that, if the Court interprets the term "when" as a jurisdictional deadline, then "missing the 'deadline prevents the court from permitting or taking action to which the statute attached the deadline,'" and that prohibition is absolute and cannot be waived by the parties. [*Doc. 11* at 19-20] (quoting *Dolan v. United States*, 130 S.Ct. 2533, 2538 (2010)). The United States contends that, if the "deadline is interpreted as a non-jurisdictional processing rule, then missing the deadline does

not deprive the court or agency of jurisdiction and it is intended merely to regulate the timing of activities." [*Doc. 11* at 20].  The United States urges the Court to find that Section 1226(c) is not a jurisdictional deadline because Congress did not provide a sanction for exceeding the time limit. *Id.*

The Court again finds that the United States' reliance on *Montalvo-Murillo* is unavailing because the Court is not recommending that the phrase "when the alien is released" be interpreted as a jurisdictional deadline.  It is not a jurisdictional deadline because, by failing to detain Petitioner immediately upon release, ICE is not deprived of its ability to detain Petitioner -- it is only deprived of its ability to <u>mandatorily</u> detain Petitioner.  Therefore, ICE is not being sanctioned by the Court's ruling that ICE will have to seek detention through a bond hearing because ICE can still seek detention of aliens under Section 1226(a).  In contrast to the cases cited by the United States in support of this argument (*Doc. 11* at 22), the Court is not depriving ICE of its power to detain Petitioner, so there is no jurisdictional deadline created by the Court's reasoning.  The Court does not find that it is a "sanction" to require ICE to seek a bond hearing so that an immigration judge can determine whether Petitioner is a threat to the community or a flight risk.  The United States has not argued that it would be unable at a bond hearing to convince an immigration judge of Petitioner's danger or flight risk.  Indeed, some of the very arguments it has made here regarding this issue could, and would likely be, made before an immigration judge.  Therefore, there is no deprivation of ICE's power to detain appropriate aliens even if such detention may not be mandatory.  The Court merely finds that the United States no longer has the right to hold Petitioner in custody without a bond hearing.

For the reasons set forth above, the Court finds that § 1226(c) does not apply to Petitioner because he was not detained immediately upon release from custody.  The Court, therefore,

recommends that Petitioner should be provided an individualized bond hearing pursuant to 8 U.S.C. § 1226(a). The Court further recommends that this hearing be provided to Petitioner **within 21 days** of these proposed findings being adopted by the Court. If Petitioner is not given a hearing within that time period, the Court recommends that he be released pending issuance of a removal order.

## RECOMMENDED DISPOSITION

For the foregoing reasons, the Court recommends that Petitioner's *Petition For Writ Of Habeas Corpus And Immediate Release From Custody (Doc. 1)* be **GRANTED** as set forth above.

*/s/ Lourdes A. Martinez*
**LOURDES A. MARTÍNEZ**
**UNITED STATES MAGISTRATE JUDGE**